# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 21-CR-30003-DWD |
| | ) |
| SEAN CLEMON, | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT'S MOTION FOR IN CAMERA REVIEW
### OF PURPORTED JENCKS ACT MATERIAL

Comes now Defendant Sean Clemon, by his attorneys, John D. Stobbs II & Daniel J. Schattnik, and for his Motion For In Camera Review of Purported Jencks Act Material states:

*I. Federal Rule of Criminal Procedure 5(f)*

Information is power and he who controls information has all the power. In criminal cases information is controlled by the prosecutor. The Constitution, specifically *Brady v. Maryland*, 373 U.S. 83 (1963), is supposed to level the playing field so that a Defendant can receive information to adequately defend himself against the Government's accusations.

Sadly, but not surprisingly, since it came into being, there have been too many instances of the Government intentionally or accidentally withholding *Brady* material from a Defendant or disclosing it at such a late date that it becomes meaningless.[1] For purposes of Courts tolerating *Brady* abuses, the prosecution of Alaska Senator Ted

---

[1] The undersigned want to be clear that they are in ***no way*** casting any aspersions whatsoever on the prosecutors in this case. The undersigned have known AUSA Summers for over 20 years and she has an exemplary reputation for honesty and integrity. As Criminal Chief in the U.S. Attorney's Office for the Southern District of Illinois, AUSA Summers, who essentially is acting as local counsel in this case, has helped adopt a progressive approach to how her office handles discovery and its *Brady* obligations. The undersigned do not know the foreign Assistant U.S. Attorneys from Washington D.C. prosecuting this case, but the fact that they are co-counsel with AUSA Summers bodes well for their honor and integrity as well. This Motion is filed due to concerns that the Government is mistakenly confusing *Brady* material for Jencks Act material.

1

Stevens was the straw that broke the camel's back. In large part, because the Government played games with its *Brady* obligations by in part claiming *Brady* evidence was non-discoverable Jencks Act material, the longest serving Republican and a well-respected U.S. Senator was convicted of corruption. On Oct. 21, 2020, pursuant to legislation introduced by Senator Dan Sullivan, a successor to Senator Stevens, Congress enacted the Due Process Protections Act, or DPPA, which amended Rule 5 of the Federal Rules of Criminal Procedure by adding subsection (f).

Rule 5(f) now requires all Federal District Court Judges, during the initial appearance in every criminal case, to issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady* and its progeny, as well as the possible consequences of violating such order under applicable law.

The new Rule not only reinforces prosecutors' existing duty to disclose exculpatory evidence to the accused, but also gives Federal Judges, through the Court's contempt powers, the ability to hold Government attorneys accountable when they fail to comply with that duty. Now, thanks to 5(f), when a defense attorney complains about a *Brady* violation at trial, sanctions can be imposed because at the arraignment, the prosecutor was forced to acknowledge that they knew, understood, and would comply with *Brady*.

Rule 5(f) has noble aspirations, but the reality is that people are humans who make mistakes. But, if the Government withholds *Brady* material for any reason, including the erroneous notion that it is not discoverable Jencks Act material, conceivably Rule 5(f) would trigger contempt motions or worse. Because Rule 5(f) would be violated, in Illinois, attorneys would be required to determine what obligations, if any, they have under *Himmel*. Frankly, it is better to be cautious on the front end by having the Court review *in camera* what the Government claims to be the Jencks Act material and determine what is and is not discoverable under *Brady*. The alternative is to wait until the mistake is uncovered, which would force a multitude of uncomfortable results for the prosecutors on the back end.

*II. March 28, 2022 Reopened Detention Hearing*

But for the March 28, 2022 Reopened Detention Hearing (Exhibit A), Sean would not have been aware of the possible Rule 5(f) discovery infraction percolating. He would have assumed that the Government would provide ***all*** *Brady* material immediately, including any *Brady* material entombed in the Jencks Act material.

United States Magistrate Gil Sison set the Motion To Reopen February 1, 2021 Detention Hearing for March 28, 2022. During that Hearing it became obvious that the Government and Defendant had vastly different positions regarding what is required to be produced under *Brady* and what the Government could protect under the Jencks Act. It was apparent that the Government was taking a very conservative and narrow view of its *Brady* obligations, necessitating this Motion.

On February 11, 2022, Sean filed a Motion To Reopen February 1, 2021 Detention Hearing (Doc. 270) and Motion & Request For Disclosure Pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B) (Doc. 271).

The Motion & Request For Disclosure Pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B), is important, because prior to the March 28, 2022 Hearing, an agreement was reached whereby the Government essentially complied with the Rule's requirements. Rather than filing a response to the Rule 12(b)(4)(B) Motion, on March 25, 2022, the Government provided Supplemental Discovery complying for the most part with Federal Rule of Criminal Procedure 12(b)(4)(B), stating: (Exhibit B)

> "[S]eparately, pursuant to the government's continuing discovery obligations, you are advised that investigators recently interviewed a person who was an active Gangster Disciples member in Missouri during the time of the charged racketeering conspiracy. **Among other statements not presently subject to disclosure, this person stated, in substance, the following: Defendant Clemon, as "Governor" of the Missouri Gangster Disciples, disapproved of members trafficking drugs. Defendant Boyce consequently tried to keep his drug trafficking hidden from Clemon. Clemon and defendant Maxwell ultimately removed Boyce from a regional position of authority because of Boyce's drug activity.** Additionally, the person stated a belief that "Lil' Frank" and "Red Beard" are two different people." (Emphasis Added)

"Shocked" "surprised" and "dismayed" are 3 adjectives that jumped to mind when the undersigned read this. This is defense dynamite that should have been disclosed under *Brady* the second the Government learned that Defendant was adamantly opposed to drug distribution and removed co-Defendant Boyce from a leadership position due to drug activity. Apparently, this interview was conducted on February 25, 2022, yet the Government waited one full month before disclosing it to Defendant and only did so because of the 12(b)(4)(B) Motion.

The truly shocking portion of the March 25, 2022 letter is the last sentence of the foregoing paragraph:

> "A report summarizing the entire interview will be provided to you as part of the government's Jencks production in advance of trial."

What if "the entire interview" is actually *Brady* and not Jencks? What happens if a large portion of the interview is *Brady* and not Jencks? What happens then? The Government admitted on March 28, 2022 that this information was only disclosed due to the 12(b)(4)(B) Motion that was filed.

The entire problem with the Government's approach is laid out in the following colloquy between Magistrate Sison and the Government at pages 37-38 of the Detention Hearing Transcript:

> "THE COURT: What if there was *Brady* material and I issued Mr. Clemon's detention on the basis of these representations which when, let's just say when trial comes and then Mr. Stobbs gets all these, "Well, wait a minute, these guys don't say what the Government thinks they say", and at that time it's too late to remedy his problem, which is that he should be released pending trial. So, how would you address that, assuming that these -- I'm not saying that your representations are not true, but what if they have an argument that *Brady* was violated at the time of trial? I can't go back and rerelease. It's over. I mean, he is prepared for trial. I detain him, he's there for a year, for another year until his trial in January of 2023. So, how would you address that issue if, in fact, for example -- How can you assure the Court that these *Brady* obligations are being ensured and someone's looking at them to provide these in a timely manner, so that way if the Court were to make a decision to detain him it does so on the right basis?

4

>MS. SUMMERS: "Your Honor, I mean, my response – my response to that is, I mean, that we as the Government attorneys have, you know, consistently reviewed the volumes of evidence in this case. Mr. Stobbs's motion, the 12(b)(4) motion prompted us to make another review of all of the evidence that we have in this case and disclose to the Defense any items of evidence that are arguably subject to a suppression motion. And, as a result of that, you know, another review of all the evidence, we identified a statement of one of the cooperators that is arguably *Brady*. We believe there's evidence to the contrary of that, the statement that Mr. Clemon -- Clemon did not condone the distribution of drugs, but one witness did say it, so we've disclosed that as *Brady* material. We have continued to review all of the items, all of the evidence and statements that we have for that possibility."

The Government's desire to lump everything under the Jencks Act is troubling, especially in light of the fact that there appears to be obvious *Brady* evidence it refuses to disclose:

>". . .all of the statements that provide these details are not just statements that are in a written report from ATF or from the Bridgeton Police Department or any other law enforcement agency. They are recorded statements; either recorded statements or actual sworn testimony. So, the Defendant will have the substance of those statements when we have produced them in *Jencks*, but the Government's representation -- We are representing that that's the substance of those statements and that it would prove up these details, and that is from at least three cooperating Defendants, or cooperating members of the gang, I should say, as well as from eyewitnesses."

Generally, a defense attorney relies on the Government's good judgment regarding its *Brady* obligations. However, as shown above, at the March 28, 2022 Hearing it was obvious that the Government's overly myopic view of its ability to shroud entire witness statements under Jencks is misguided.

### III. Discovery Practices In The Southern District of Illinois

The "Dark Ages" of parsimonious discovery started with U.S. Attorney Grace's regime. *Brady* was regarded as a nuisance. Discovery compliance could be summed up as "[Y]our client knows what he did." It seemed Defendants were always short changed on discovery, and "real discovery" was not provided until right before trial commenced, because in the Dark Ages, the Government concluded all discovery was really Jencks Act

material.  At trial, there were constant "*Brady* whoopsies."  A "*Brady* whoopsie" was excused because the Government would always say it was an honest mistake not to provide a specific piece of evidence.  *Brady* discovery type Motions were required because it seemed the Government felt that Defendants really only deserved discovery as set out in Rule 16.   From a discovery standpoint, the nadir in the Southern District of Illinois were the Wigginton years which made defense attorneys long for the "good old liberal" days of Grace's discovery practices.

All of that changed, seemingly overnight, with the present leadership in the U.S. Attorney's Office.  With real input from Federal Public Defenders Welby and Humphrey, the U.S. Attorney's Office has adopted a discovery practice that is fair to Defendants.  Presently, on the front end, defense counsel agrees to a protective order, and Jencks Act material is provided to Defendants soon after the arraignment.  Oftentimes grand jury transcripts are also provided.  Discovery issues are resolved informally between the defense attorney and AUSA assigned to the case.  In the event the defense attorney isn't satisfied, leadership makes itself available to resolve discovery disputes.  Thanks to this progressive, fair approach, discovery motions have become practically non-existent.  The openness and fairness to discovery practices of present leadership in the U.S. Attorney's Office is frankly refreshing.  Not surprisingly, Defendants plead guilty much more readily when they know what the evidence against them is.

Why the Government in this case, which at one time was death eligible, has decided to return to the Dark Ages of "everything is Jencks," is unknown.  It can't be stated strongly enough though that the one difference between the Grace and Wigginton administrations and now is Rule 5(f).

### IV.  Protective Orders

The real argument on March 28, 2022 to detain Sean was that he was too dangerous of an individual to be released on bond.  Of course, this argument was made under the full shroud of the Jencks Act.  Sean's detention is based almost solely on evidence which neither he or his attorneys have been able to view.  That should shock anyone's conscious.  Now, with the specter of Sean spending the rest of his life in prison,

the Government still clings to the Jencks Act to protect it from having to disclose what very well could be *Brady* material.

> "As I stated, the Government has not produced these statements -- Well, the Government has these statements either in the form of a recorded interview or as testimony, but has not provided those statements to the Defendant, because they are *Jencks* material and because, as we have discussed at length in the previous detention hearing, there is great concern that providing such material prematurely would result in witness tampering, harassment, and intimidation." (P. 7 Detention Hearing)

The undersigned has represented literally thousands of individuals charged with all sorts of federal crimes. In cases like this, when the Government gets into a jam, its "go to argument" is "[W]e can't turn this information over because Defendant is dangerous and all people like Defendant will go out and harm witnesses. If we provide the discovery we are obligated to disclose under the Constitution and *Brady*, Defendant will not only harm a witness but will also obstruct justice. He's just too dangerous of a person to have information he could use to defend himself."

The Government always wants the Court to believe that there is no middle ground. That dissemination of discovery which is arguably *Brady* should not be disclosed due to this overarching danger.

Under present leadership in the U.S. Attorney's Office For The Southern District of Illinois, the solution to Government concern over witnesses being harmed or obstruction of justice is either a formal written protective order or an oral protective order. The discovery would be produced for "attorney's eyes only," and not to be disseminated to their clients. At the March 28, 2022 Detention Hearing, the undersigned told Magistrate Sison that they would agree to whatever protective order the Government desired so that there would not be future *Brady* misunderstandings. (P. 30 Detention Hearing) In past cases, as recently as in *U.S.A. v. Frazier*, the undersigned agreed to an informal protective order whereby they were provided with extensive discovery, including Jencks Act material, with the understanding that it would not be disseminated to their client without Court order. As this Honorable Court will recall, the Frazier boys were charged with exceptionally violent crimes and are the poster children of obstruction

7

of justice, yet rather than making a *Brady* mistake which might have triggered Rule 5(f), the Government erred on the side of disclosure pursuant to a protective order.

While the public interest in preserving an informant's anonymity and encouraging citizens to report crimes is very strong, that interest does not override the interest of both Defendant and the public in ensuring that Defendant is represented by counsel in accordance with his constitutional right to effective assistance of counsel. *Roviaro v. United States*, 353 U.S. 53 (1957) at 59-62

The undersigned do not want to minimize the Government's concern for the safety of its witnesses, but the solution to this concern is not to tamp down on its *Brady* obligations and create possible Rule 5(f) headaches. The solution is to find a creative way around the problem, which could entail entering into a protective order that would satisfy both sides.

### V.  Jencks Act

As this Honorable Court knows, the Jencks Act, 18 U.S.C. § 3500, provides that no statement made by a Government witness or prospective witness may be the subject of a subpoena until after that witness has testified on direct examination. At that point, the Court must order, upon motion of the Defendant, that all of that witness's statements related to the subject matter the witness testified about that the Government possesses be turned over to the Defendant. If this disclosure is made during trial, the Court may order a recess so that the defense can review the statements and prepare a cross examination. Failure to comply with the discovery order results in the witness's testimony being stricken.

The Jencks Act was never intended to be a legitimate "discovery tool" for the defense. Rather it was enacted in response to the "Red Scare" of the 1950s and had the actual intent of curtailing legitimate impeachment evidence for a criminal Defendant, especially a communist. While Jencks was initially created as a legislative tool to curb the "red under every bed" threat, it has morphed into a prosecutor's favorite shield to avoid production of material evidence in drug and gang violence cases, especially those involving paid undercover informants and cooperating accomplices.

A brief review of the history of the Jencks Act shows that here, the Government's narrow interpretation is not well taken. The Supreme Court first looked at the Jencks Act in 1959 with its decision in *Palermo v. United States*, 360 U.S. 343 (1958). In that case, the Court held that the Jencks Act provided the exclusive means of discovering witness statements for criminal Defendants. Id. at 350. However, the Court refused to interpret the entire statute narrowly. For example, the Court held that, "other recordings" were also statements, "the statute was meant to encompass more than mere automatic reproductions of oral statements." Id. at 351. The Court also held that *in camera* review was appropriate in close cases, even though the statute has no such provision. Id. at 354. The Court left it to trial courts' discretion what extrinsic evidence to admit to prove the nature of the statement, putting more power in the hands of the Courts and less in the hands of prosecutors, even though the statute could be read to grant all the power of determining when it applies to prosecutors. Id. at 354-55.

The very same day, the Supreme Court held that grand jury proceedings were beyond the ambit of the Jencks Act, and thus did not need to be turned over to the defense. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 398 (1959)

Two years later, the Jencks Act was again expanded in *Campbell v. United States*, 365 U.S. 85 (1961). In that case, the Government possessed a report of an interview with the witness, but it was unclear whether the witness had adopted the report as a statement of his own. Id. at 93. The trial judge reviewed the report but failed to call or order the Government to call the agent who made the report to testify. Id. at 94-95. Instead, it held that the defense should have subpoenaed the agent because the agent's testimony was necessary in order for the judge to make an accurate decision about whether or not the report should be discoverable. Id. at 95. This was error. Id. "The circumstances of the case clearly required that the judge call [the agent] of his own motion or require the Government to produce him." Id. at 96. The Court concluded that the Jencks Act does not put the burden of proving discoverability or non-discoverability on any party.

A month later, the Jencks Act was expanded again in *Clancy v. United States*, 365 U.S. 312 (1961). In that case, Government witnesses had interviewed the Defendants and

later made and signed memoranda summarizing the interviews. Id. at 314. The Court held that a written statement need not be contemporaneous with an oral statement in order for it to be discoverable under the Jencks Act. Id. at 314-15.

In 1963, *Brady* was decided. Initially, there was no friction between *Brady* and the Jencks Act. Actually, by 1966, the Jencks Act had been repurposed. Rather than serving as a limit to discovery, it was now interpreted as providing an avenue for more discovery than would otherwise be available. *Dennis v. United States*, 384 U.S. 855, 870-71 (1966) held that:

> "These developments are entirely consonant with the growing realization that **disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice. This realization is reflected in the enactment of the so-called Jencks Act, […] which makes available to the defense a trial witness' pretrial statements insofar as they relate to his trial testimony.** It is also reflected in the expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous to the civil practice.") (Emphasis added, Internal citations and footnotes omitted).

In *Dennis*, the Court held that the Defendant was entitled to production of grand jury materials.[2] Id. at 875.

Thus, the history of the interpretation of the Jencks Act has been one of expanding the discovery available to criminal Defendants, not restricting discovery. In reality and in practice though the Government has been able to create a "Wall of Jencks," whereby it shields entire witness statements under the guise of Jencks. The Government always claims that the *tremendous* trial advantage it gains by not providing witness statements is an unintended consequence of the Jencks Act.

### VI. Brady

*Brady* was meant to be a bastion of fairness. At pages at 87-88 the Court held that:

> "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. […] *A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate*

---

[2] This was amended into the statute itself in 1970. *See*, *Britt v. North Carolina*, 404 U.S. 226, 231 n. 1 (1971) (J. Douglas, dissenting).

> ***him or reduce the penalty helps shape a trial that bears heavily on the Defendant.*** That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not 'the result of guile,' to use the words of the Court of Appeals." [Emphasis added]

In *Brady,* the defense's theory was that Brady had in fact been guilty of the bank robbery, but that his accomplice had committed the murder in the process of the bank robbery. Id. at 84. Therefore, Brady should not receive the death penalty. Id. Defense counsel had requested before the trial that he be allowed to examine the accomplice's extrajudicial statements. Id. The Government mostly complied, but withheld a statement in which the accomplice confessed to the actual homicide. Id. The Government turned over that statement after Brady had been tried and convicted and his conviction had been affirmed on appeal. Id.

In *Brady*, the Court held that:

> **"the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."** Id. at 87. [Emphasis added]

*Brady* deals with exculpatory evidence. But, as the Supreme Court reminded everyone in *Cone v. Bell*, 556 U.S. 449, 475 (2009) *Brady* includes information that may not exculpate but that nonetheless mitigates punishment. The mitigation of punishment aspect of *Brady* is often forgotten by the Government. As the Court put it, while "[e]vidence that is material to guilt will often be material for sentencing purposes as well, the converse is not always true." *Id.* at 474. Cone's sentence was vacated because although the suppressed witness statements, police teletypes and interview notes relating to Cone's drug use fell short of sustaining his insanity defense, they "may well" have been material to the jury's deliberations at the sentencing phase. *Id.* at 475

Here, the Government originally sought the death penalty. Doesn't that alone broaden the mitigation of punishment aspect of the Government's disclosure requirements? Certainly, from the time the Government sought to put Sean to death until the time that he was "de-deathed" mandates that anything in the witness statements

11

conceivably related to mitigation of punishment has to be turned over under *Brady*. Now that Sean is "only" facing life imprisonment if convicted, there is a myriad of sentencing mitigation arguments that can be made.

An advocate in an adversarial system is expected to be strategic and circumspect, but *Brady* is an exception to this model, ***requiring*** the prosecutor to assist rather than counter the defense case, *See United States v. Bagley*, 473 U.S. 667, 675 n.6 (1985). *Brady* invokes the prosecutor's higher calling to do justice, *See Connick v. Thompson*, 131 S. Ct. 1350, 1365 (2011) and the criminal justice system's central goal of protecting the innocent, S*ee Herrera v. Collins*, 506 U.S. 390, 399 (1993).

The problem though is that prior to Rule 5(f), the Government could pretty much do as it wished with *Brady* and hide behind Jencks or "accidental" non-disclosure. Rule 5(f) is a game changer which mandates that the Government comply with *Brady,* or else.

Since *Brady* was decided, its scope has been expanded. For instance, in addition to material exculpatory evidence, the Government is required to turn over evidence that could be used to impeach its witnesses. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). This includes a duty to disclose that a Government witness has received a deal for immunity. Id. It also includes a duty to disclose that a Government witness is an informant. *Banks v. Dretke*, 540 U.S. 668, 698 (2004). Any impeachment material in the Government's possession must also be turned over to the Defendant, even if this evidence is relatively weak. Due to the dearth of impeachment evidence produced in discovery, Sean will probably file a Motion For Disclosure of Impeaching Evidence to force the Government to fully comply with *Brady* and *Giglio*.

A successful claim that *Brady* has been violated has three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Therefore, *Brady* has been expanded to require that prosecutors turn over to the defense all evidence favorable to the Defendant, of which suppression would cause prejudice.

The mandate of *Brady* is so strong that even negligent or good faith failures to disclose could be a violation. *Giglio*, 405 U.S. 150 at 154 ("Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor.") Rule 5(f) effectively removes the "accidental" non-disclosure excuse.

Regarding the issue of "timeliness" --- when *Brady* material has to be disclosed, in *United States v. Binday*, 2012 WL 6135013 (S.D.N.Y. Dec. 10, 2012) Southern District of New York Judge Colleen McMahon ruled on a *Brady* motion three months before trial in a complex, multi-defendant fraud case that "'timeliness' with respect to *Brady* disclosure means *immediate* disclosure upon discovery.

Here, had Sean not filed a Motion To Reopen February 1, 2021 Detention Hearing and Motion & Request For Disclosure Pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B), the Government still would not have told him that there was evidence that he despised drug dealing. In a case like this, with the stakes as high as they are, there is simply no excuse not to be progressive and liberal with *Brady*.

### *VII. Brady v. Jencks*

> MS. SUMMERS: So, we have not provided those materials in discovery, but we have reviewed them for any possible *Brady* material and provided to the Defense the substance of one statement that is potentially *Brady*, with specific to Mr. Clemon, and we will, of course, continue to seek to identify any other *Brady* material, and if we do we will immediately provide it to the Defense.
>
> THE COURT: I'm glad you mentioned that, because, I mean, obviously *Jencks* is a statute, 18 U.S.C. 3500. But, I assume that your Constitutional obligations under *Brady* would trump any -- any -- any requirement or ability for you to hold those *Jencks* materials in -- I guess, nondisclosed until the time of trial, is that right?
>
> MS. SUMMERS: That's correct, Your Honor. And just recently we provided to the Defense just the substance of a statement of a witness that could be arguably *Brady* with regard to Mr. Clemon. We have not identified that witness to the Defense for all the reasons that I just stated, but we have provided a summary of the substance. (PP. 7-8 of Detention Hearing)

Simply stated, as Magistrate Sison pointed out on March 28, 2022, *Brady* is a Constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500. They are not equal. The incredible friction that exists between these two discovery requirements always has to be resolved in favor of Constitutional protections, not statutory interpretation.

The Government appeared to argue at the March 28, 2022 Detention Hearing that the Jencks Act (18 U.S.C. § 3500) serves as a prosecutorial shield from *Brady* and its progeny. The Government is simply wrong, and if this approach runs afoul of Rule 5(f), there could be negative consequences.

The Government indicated that it could refuse to disclose the witness statements in question because they constituted Jencks Act material. It appears that the Government's position was that it could strictly follow Federal Rule of Criminal Procedure 16 and Jencks would allow it to deprive Defendant of the witness statements. The Government is obviously free to follow this strategy, so long as it is likewise willing to deal with the possible consequences under Rule 5(f) of suppressing discoverable material. Down the road, it would be bad news for the Government under Rule 5(f) if this Honorable Court determines that while a report might be protected by the Jencks Act, the entire report or portions thereof nevertheless should have been disclosed under *Brady*.

In the prosecution of Senator Stevens, at trial, the Government took the position that agents' reports of witness interviews were not prior statements of those interviewed, and therefore not subject to disclosure. This was technically correct, and while it did not necessarily violate *Brady*, or even the law, it created the environment where *Brady'*s mandate could be ignored. That seems to be the situation here.

Regarding providing *Brady* material, the Jencks Act is not an effective shield for many reasons. First and foremost as stated above, it is statutory, while *Brady* and its progeny are Constitutional. Furthermore, the Jencks Act provides that the Defendant may be granted a temporary recess in the event that Jencks material is disclosed during the trial. 18 U.S.C. §3500(c). This can cause trials to last much longer than they would have had the Jencks material been disclosed prior to trial, sometimes even turning a

week-long trial into a month-long trial. Here, the trial is expected to last multiple months and providing Jencks Act material shortly before trial will needlessly prolong the trial. The Jencks Act is also much more specific than *Brady*; it applies only to "statement[s] or report[s]." 18 U.S.C. § 3500(a). *Brady*, on the other hand, applies to all evidence, including statements and reports. For evidence that falls within both *Brady* and the Jencks Act, the Government generally complies with *Brady* if it complies with the Jencks Act. *See United States v. Anderson*, 574 F.2d 1347, 1352 (5th Cir. 1978).

If a Defendant claims that material is discoverable under both *Brady* and the Jencks Act, then each argument must be taken up in turn. *See, e.g., United States v. Morris*, 957 F.2d 1391 (7th Cir. 1992). In that case, the Defendant claimed that the trial court had erred in failing to order discovery of certain FBI reports under both the Jencks Act and *Brady*. Id. at 1400. The Court analyzed the material under both laws. Id. at 1400-1403. In that way, the Jencks Act cannot allow the Government to refuse to produce discovery that is required to be produced under *Brady*.

The Second Circuit concluded that *Brady* and *Giglio* always trump the Jencks Act, and if information is both Jencks material and *Brady*, "it must be disclosed on the earlier *Brady* timeline." *United States v. Moore*, 867 F. Supp. 150, 152 (D.D.C. 2012), *United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008)

In fact, even after and despite the passage of the Jencks Act, the Supreme Court has time and again emphasized that prosecutors ought to err on the side of disclosure. *United States v. Agurs*, 427 U.S. 97, 108 (1976) ("[T]he prudent prosecutor will resolve all doubtful questions in favor of disclosure."); *Kyles v. Whitley*, 514 U.S. 419, 439 (1995) ("This mean, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence.").

Thus, the current state of criminal discovery is that prosecutors are required to disclose material dealing with sentencing as well as exculpatory and impeachment evidence to Defendants. Prosecutors also have a duty to disclose statements made by their witnesses before trial, although they may choose to delay the trial by disclosing those statements after the witness has testified, rather than doing so in advance.

Really, the "current state of criminal discovery" has been unchanged since *Brady* was handed down nearly 60 years ago. What has changed is that for the ***first time ever*** any *Brady* violation now triggers Rule 5(f) where real consequences can be meted out on the spot as opposed to the violations being harmless error.

## *VIII.  Conclusion*

35 years ago, Irl Barris asked Judge James Foreman to review *in camera* Jencks Act material so that Judge Foreman could make a determination as to whether or not it contained discoverable evidence. Judge Foreman declined to do so and the Seventh Circuit remanded the case. *U.S.A. v. Allen* 798 F.2d 985 (7th Cir. 1985)

Rule 5(f) reinvigorated *Brady*. After the March 28, 2022 Detention Hearing, the undersigned have real concerns that at an inopportune time for the Government a *Brady* violation will be uncovered. Rather than having that transpire, the Government should be required to provide to this Honorable Court for an *in camera* review the Jencks Act material it is presently withholding. Defendant requests that this Honorable Court review this material and make a determination as to whether or not any of this material is discoverable under *Brady.*

SEAN CLEMON

/s/John D. Stobbs II
John D. Stobbs II, No. 06206358
Attorney for Defendant
307 Henry St. Suite 211
Alton, Illinois 62002
Telephone: (618)462-8484
FAX: (618)462-8585
Email: jds2@stobbslaw.com

/s/Daniel Schattnik by: JDS2 w/consent
Daniel Schattnik
Attorney for Defendant
3 South 6th Street
Wood River, Illinois 62095
Telephone: (618)258-1800
FAX: (618)258-1957
Email: schattnik@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2022, a copy of the attached *Motion For In Camera Review of Purported Jencks Act Material* was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Ms. Ali Summers
Assistant U.S. Attorney
Nine Executive Drive
Fairview Heights, Illinois 62208

STOBBS LAW OFFICES

/s/ John D. Stobbs II
307 Henry St. Suite 211
Alton, Illinois 62002